**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Pullin Olson, et al. | No. CV-04-2428-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| McKesson Corporation, et al., | |
| Defendants. | |

During the 2004 fiscal year, Deborah Olson was employed by McKesson Corporation ("McKesson") as a sales executive. Olson and McKesson entered into an employment contract–the Sales Incentive Compensation Plan–which identified Olson's sales quota and her commission rate. Olson substantially exceeded her quota and expected to receive commissions of over $400,000. However, following the close of the fiscal year, and after Olson completed all of her commission-earning sales,[1] the McKesson Sales Incentive Compensation Committee informed her that her commission was retroactively capped at $187,500. Olson disputes this reduction, and accordingly filed this action against McKesson for breach of contract, unjust enrichment, and withholding of wages. We have before us

---

[1] McKesson emphasizes that Olson did not earn her commissions at the end of the fiscal year because the amount of the commission was contingent upon various factors that could occur thereafter. However, Olson does not dispute a reduction pursuant to those factors. She disputes McKesson's unrelated decision to reduce her commission rate.

1  Olson's motion for summary judgment (doc. 23), McKesson's response and cross-motion for
2  summary judgment (doc. 28), Olson's reply in support of her motion and response to the
3  cross-motion (doc. 34), and McKesson's reply in support of its cross-motion (doc. 37).

4        McKesson contends that Olson is barred from bringing this action because she failed
5  to comply with the contractual dispute resolution process. The contract provides that "[a]ny
6  payment questions/issues/disputes for the current Plan year should be documented in an e-
7  mail, and sent to the Director of Sales Incentive Compensation Management" and that "[o]n
8  a monthly basis a committee . . . will meet to review disputes and evaluate incentive
9  compensation plan performance." PSOF, Ex. 1 at 16. The provision does not state that it is
10 the exclusive or necessary method of dispute resolution, and therefore Olson's failure to
11 comply will not bar her from bringing this action. See Demasse v. ITT Corp., 194 Ariz. 500,
12 515, 984 P.2d 1138, 1153 (1999) (finding a similar dispute resolution provision permissive,
13 not mandatory); cf. Moses v. Phelps Dodge Corp., 818 F. Supp. 1287, 1290-91 (D. Ariz.
14 1993) (finding a dispute resolution provision mandatory that stated that the procedures
15 "constitute the sole and exclusive procedure for the processing and resolution of any
16 controversy, complaint, misunderstanding or dispute that may arise concerning any aspect"
17 of the employment or its termination). Moreover, Olson had reason to disregard the
18 provision; senior management notified her supervisor that they would not reconsider their
19 decision to retroactively reduce her commission. PSSOF, Ex. 2 at 77.

20       McKesson next contends that three provisions in the contract permit it to unilaterally
21 and retroactively reduce Olson's commission rate. First, McKesson identifies paragraph 8.6,
22 which provides:

23     Senior Management of McKesson Information Solutions reserves the right to
    modify this Sales Incentive Compensation Plan as deemed appropriate to
24     handle unusual and/or unanticipated situations. Examples of this include, but
    are not limited, to situations where: the Company goes at risk; the company
25     shares risk with a customer; unusually large discounts are granted to win
    business; or a large transaction requires significant company resources to close
26     business.

27 PSOF, Ex. 1 at 15. Contrary to McKesson's interpretation, this provision is implicitly
28 restricted to prospective modifications. When interpreting a contract, "an interpretation

- 2 -

1 which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an
2 interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement
3 (Second) of Contracts § 203 (1981). If this provision were interpreted to permit unilateral
4 retroactive modifications, McKesson could revoke Olson's entire commission for work
5 previously performed. Not only would no rational person agree to those terms, but any
6 agreement that included those terms would be merely illusory because it would lack
7 consideration. Therefore, we reject McKesson's interpretation and adopt a far more rational
8 interpretation of this provision–McKesson may only unilaterally amend the contract
9 prospectively.

10 Moreover, McKesson did not identify an unusual or unanticipated situation to justify
11 modification. It described its rationale for the commission modification as follows: "as
12 attainment exceeds the 150% attainment level, the percentage commission for one individual
13 relative to the incremental contract margin becomes disproportionate due to the rapid
14 increase in commission accelerators" and the "impact of this scenario with a total quota less
15 than $2[ million] magnifies the imbalance and results in earnings that exceed expectations
16 and audit parameters." PSOF, Ex. 5. That is, following an audit, McKesson realized that
17 some of its commission rates were too large. McKesson does not identify a sudden and
18 unexpected change in risk, a downturn in markets, or any of the reasons identified in
19 paragraph 8.6. The examples in that paragraph are merely illustrative, not exhaustive, but
20 paragraph 8.6 clearly does not permit modifications for mere buyer's remorse.

21 Next, McKesson identifies two bolded sentences preceding Olson's signature on
22 Appendix A to the contract: "I have read, understand and agree to the FY2004 Sales
23 Incentive Compensation Plan. I understand that McKesson Information Solutions has the
24 right to amend or modify this Plan at any time without notice." PSOF, Ex. 2. As above, the
25 only rational interpretation of this provision is that McKesson can prospectively modify the
26 commission rate. And this provision is logically limited to the specific contingencies
27 outlined in the paragraph 8.6, none of which are present. Otherwise paragraph 8.6 would be
28 meaningless.

1   Finally, McKesson identifies paragraph 8.7, which provides in part that
2   "[a]mendments, modifications or notices to this Plan will be issued in writing and shall be
3   effective upon the date specified in the correspondence." Id. This is also insufficient. That
4   a modification is effective on the date of the notice does not mean that it is retroactive.
5   McKesson therefore breached its employment contract with Olson by retroactively reducing
6   her commission. Accordingly, McKesson is liable for the unpaid portion of Olson's
7   commission.

8   Olson, however, seeks treble the amount of her unpaid commission. If an employer
9   fails to pay "wages" due an employee, that employee may recover treble the amount of the
10  unpaid wages in a civil action. A.R.S. § 23-355. "Wages" means "nondiscretionary
11  compensation due to an employee in return for labor or services rendered by an employee for
12  which the employee has a reasonable expectation to be paid whether determined by a . . .
13  commission or other method of calculation" and "include . . . commissions . . . when the
14  employer has a policy or a practice of making such payments." A.R.S. § 23-350. While
15  McKesson could modify Olson's commission in some circumstances, it did not have the
16  discretion to do so here. And Olson had a reasonable expectation to be paid the commission.
17  Therefore, the commission is a "wage."

18  Treble damages are not, however, available where there is a reasonable good faith
19  dispute as to the amount of wages due. A.R.S. § 23-352. The parties do not dispute any
20  material facts; they merely dispute the meaning of the contract. McKesson's position,
21  although erroneous, finds some support in the contract and extra-jurisdictional caselaw and
22  nothing causes us to conclude that it interpreted the contract in bad faith. Therefore we reject
23  Olson's request for treble damages. See Abrams v. Horizon Corp., 137 Ariz. 73, 79, 669 P.2d
24  51, 57 (1983) (concluding that damages were not subject to trebling where there is a good
25  faith dispute over the contract interpretation).

26  Olson also raises a claim for unjust enrichment and seeks punitive damages therefor.
27  Because a valid contract governs the relationship between the parties, "the doctrine of unjust
28

- 4 -

1 enrichment has no application." Brooks v. Valley Nat'l Bank, 113 Ariz. 169, 174, 548 P.2d
2 1166, 1171 (1976). Therefore, Olson's unjust enrichment claim fails.

3       **IT IS THEREFORE ORDERED GRANTING** plaintiff's motion for summary
4 judgment with regard to the contract claim and **DENYING** with regard to all other claims
5 (doc. 23).

6       **IT IS FURTHER ORDERED DENYING** defendant's motion for summary
7 judgment with regard to the contract claim, and **GRANTING** with regard to all other claims
8 (doc. 28).

9       Within 20 days of the docketing of this order, plaintiffs shall file a motion for
10 summary judgment and memorandum of points and authorities in its support on the issues
11 of damages arising from this breach of contract, and attorney's fees. Defendant will have 10
12 days from service thereof to file a responsive memorandum, and plaintiffs will have 5 days
13 from service of the responsive memorandum to file a reply memorandum. Because plaintiffs
14 shall file any request for attorney's fees now, rather than after the entry of judgment, these
15 timing dictates apply rather than those identified in LRCiv 54.2.

16       DATED this 14th day of August, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge